**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GEORGE BARBER, et al.

        Plaintiffs,

vs.                                         Case No. 3:04-cv-1296-J-32TEM

AMERIQUEST CAPITAL CORPORATION
AND AMERIQUEST MORTGAGE
COMPANY,

        Defendants.

## ORDER[1]

This case is before the Court on Plaintiffs' Notice of Motion and Motion to Remand (Doc. 12), Defendants' Motion to Dismiss (Doc. 4), and Plaintiffs' Motion for Leave to File Reply Memorandum in Support of Motion to Remand (Doc. 29). The issues presented in the motion to remand are (1) whether plaintiffs' claims satisfy the $75,000 amount in controversy under 28 U.S.C. §§ 1332(a) and 1441(a); and (2) whether the supplemental jurisdiction statute, 28 U.S.C. § 1367, allows this Court to exercise diversity jurisdiction over plaintiffs' claims, and those of the putative class, that do not independently meet the amount in controversy requirement.  Defendants Ameriquest Capital Corporation and Ameriquest Mortgage Company ("defendants")

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

responded to the Motion to Remand (Doc. 27), and the parties submitted additional memoranda in light of the Supreme Court's decision in Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S.Ct. 2611 (2005).  (Docs. 29, 33, 34).  The issues presented in the motion to dismiss are whether plaintiffs properly pled the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Florida Mortgage Lending Act ("FMLA"), and unjust enrichment claims.  Plaintiffs have responded to that motion. (Doc. 18). On September 12, 2005, the Court heard oral argument on the motions via telephone.

**I.    BACKGROUND**

This is a putative class action diversity case concerning mortgage transactions that plaintiffs and the putative class members entered into with defendants.  Plaintiffs originally filed the Class Action Complaint ("complaint") in the Circuit Court of the Third Judicial Circuit in and for Columbia County, Florida.  (Doc. 2).

Plaintiffs allege that defendants engage in a scheme whereby they use deceptive practices to entice debt ridden or low income Florida homeowners to "enter unfavorable residential loan transactions" under the guise that refinancing their mortgages and/ or consolidating their debt with defendants will be beneficial.  (Doc. 2, ¶ 27).  Plaintiffs allege that after defendants entice homeowners to refinance or consolidate debt, defendants intentionally obfuscate and conceal loan terms, and that doing business with defendants is actually more expensive, not less.  (Id. at 29). Plaintiffs set forth in detail the "bait and switch" tactics that defendants purportedly

employ to perpetrate this scheme, which ultimately results in defendants presenting loan terms at closing contrary to those promised, and further coercing plaintiffs to consummate the transaction.  (Id. at 23-26).  The complaint and removal papers set forth the alleged facts surrounding each named plaintiff's transaction with defendants.

### A.    George and Crisella Barber

The Barbers allege that in January 2003 defendants contacted them regarding refinancing their existing mortgage loan.  (Id. at 32).  Defendants offered the Barbers an interest rate of 8.5%, which was supposed to lower their monthly payment; the Barbers subsequently closed a loan with defendants.  (Id.).  The Barbers allege defendants' representative did not provide a good faith estimate, review or explain the loan documents at closing, or provide copies of the closing documents after closing. (Id. at ¶ 34).  Instead of receiving the promised 8.5% rate, the Barbers received an adjustable rate where the principal amount of the loan is $127,330.00, and 9.750% is the lowest interest rate the Barbers will pay over the life of the loan.  (Id. at ¶¶ 32-40; Doc. 27, Melber Dec., Ex. "A").  The peak interest rate is 15.750%.  If the Barbers had received the fixed 8.5% rate, and assuming *arguendo* the lowest possible rate (9.750%) remains effective for the thirty year duration of their loan, the Barbers will pay a minimum difference of $41,364.00 in interest, plus an unspecified amount of "excessive fees."

### B.    Debra Holloway

Holloway alleges that in 2003 defendants contacted her and represented she

could save $100 on her monthly mortgage payment, and that the lower payment would include her existing *ad valorem* tax obligation. (Doc. 2, ¶ 41). However, after signing the ARM note with defendants, her monthly obligations increased $100, rather than decreased. (Id. at 43). In April 2004, Holloway refinanced her Ameriquest loan with Chase Bank. (Id. at 46). Holloway alleges her transaction with defendants ultimately cost her between $9,000.00 and $10,000.00. (Id. at 41-46).

### C. Laurence Osten

Osten alleges that in December 2003 he responded to an Ameriquest advertisement, and Ameriquest offered him a 4.5% interest rate on a thirty year loan. (Id. at 47); (Doc. 27, Melber Aff., Ex. "D"). The principal amount of the loan was $117,000.00. (Doc. 27, Melber Aff., Ex. "D"). Osten instead received an ARM note with an introductory 8.5% rate; the peak rate was 14.5%. (Doc. 2 at ¶¶ 50-53; Doc. 27, Melber Aff., Ex. "D"). Using the minimum 8.5% rate throughout the thirty year duration of the loan, the difference in Osten's total interest payment between the rate "offered" (4.5%) and the "actual" rate (8.5%) is $109,999.80. On April 29, 2005, after making twelve payments under the Ameriquest mortgage and note, Osten sold his property; the funds from the sale satisfied Osten's obligation to Ameriquest. (Doc. 36).

### D. Removal

On December 16, 2004, defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. (Doc. 1). On February 4, 2005, plaintiffs filed a motion for

-4-

remand. (Doc. 12). On April 6, 2005, this Court entered an Order postponing consideration of the motion to remand (Doc. 30) until the United States Supreme Court decided Exxon Corp. v. Allapattah Servs., Inc., 125 S.Ct. 317 (2004)[2] and del Rosario Ortega v. Star-Kist Foods, Inc., 125 S.Ct. 314 (2004).[3] The Supreme Court consolidated those cases and issued an opinion on June 23, 2005. Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S.Ct. 2611 (2005).

## II. DISCUSSION

### A. Motion to Remand

#### 1. Amount in controversy

There is no dispute that the parties are diverse. The disagreement is whether defendants have established that the amount in controversy exceeds $75,000. "[R]emoval statutes are construed narrowly" and "uncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Where

---

[2] Granting certiorari on the issue of "[w]hether the supplemental jurisdiction statute, 28 U.S.C. §1367, authorizes federal courts with diversity jurisdiction over the individual claims of named plaintiffs to exercise supplemental jurisdiction over the claims of absent class members that do not satisfy the minimum amount-in-controversy requirement."

[3] Granting certiorari on the issue of "[w]hether, in a civil diversity action in which the claims of one plaintiff meet the amount-in-controversy threshold, 28 U.S.C. §1367 authorizes the district courts to exercise supplemental jurisdiction over the related claims of additional plaintiffs who do not satisfy the amount-in-controversy requirement."

a plaintiff fails to specify the total amount of damages requested, a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.  Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) (citations omitted).  The proper inquiry is whether there is subject matter jurisdiction at the moment of removal.  Poore v. American-Amicable Life Ins. Co. of Tex., 218 F.3d 1287, 1290 (11th Cir. 2000).

Where, as here, plaintiffs seek injunctive relief, the value of injunctive relief for amount in controversy purposes is the "monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted."  Leonard, 279 F.3d at 973 (citing Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc., 120 F.3d 216, 218 (11th Cir. 1997)).  The value of the injunctive relief may be "too speculative and immeasurable" to satisfy the amount in controversy requirement.  Cohen v. Office Depot, Inc., 204 F.3d 1069, 1078-79 (11th Cir. 2000) (citing Ericsson, 120 F.3d at 221-22).

Plaintiffs' claim for injunctive relief under FDUTPA, § 501.211(1), Florida Statutes, is the epicenter of the amount in controversy dispute.  Defendants assert that since plaintiffs seek injunctive relief from their current notes with defendants, the Court must consider the principal amounts of the loans and the accruing interest for the thirty year period of the notes, which would mean all named plaintiffs satisfy the amount in controversy requirement. (Doc. 1).  Alternatively, defendants assert that, at very least, to determine the value of the injunctive relief, the Court must consider

the difference between the offered interest rate and the charged interest rate as reflected in plaintiffs' respective ARM notes with defendants.  (Doc. 27).  Plaintiffs contend that defendants fail to meet their burden concerning the value of the injunctive relief; specifically, that the Court is limited to considering current "out of pocket" losses, and that the Court may not consider any future damages that may accrue due to the difference in the interest rates as those damages are speculative and immeasurable. (Doc. 12). For this proposition, plaintiffs rely on Lutz v. Protective Life Ins. Co., 328 F.Supp.2d 1350 (S.D. Fla. 2004), and  Forest v. Penn Treaty American Corp., et al., 270 F.Supp.2d 1357 (M.D. Fla. 2003).

In Lutz, plaintiff filed a putative class action for declaratory relief in state court concerning defendant's significant unilateral increase in insurance premiums; defendant removed the case on diversity grounds.  328 F.Supp.2d at 1353.  The issue was the proper monetary loss the court should consider to determine the value of the declaratory relief sought for amount in controversy purposes. Id. at 1359. Defendant's position, *inter alia*, was that the court must consider the amount of money plaintiff was paying in excess of the original premium. Id. at 1360.  The court articulated that "such a calculation is incorrect because it includes both proper and improper premium increases, while Plaintiff is only contesting the improper increases." Id. at 1360-61. The court also noted that defendant improperly assumed that (1) the premium will remain at its original level throughout the duration of coverage, (2) the premium will never properly increase, and (3) plaintiff will remain insured with defendant for the

-7-

remainder of his life expectancy. Id. at 1361. The court ultimately held that defendant failed to meet its burden of demonstrating the value of the relief because the various contingencies were too immeasurable and conjectural. Id.

Similarly, in Forest, defendants induced the putative class plaintiffs to purchase a long-term care insurance policy, only to substantially increase the premium when the insureds allegedly became uninsurable by other companies. 270 F.Supp.2d at 1359. Plaintiffs asserted multiple causes of action; among them were restitution and reformation claims. Id. Even though the named plaintiffs alleged in the complaint that none of their claims met the $75,000 threshold, defendants sought to remove on the theory that one unnamed putative class member met the amount in controversy requirement. Id. at 1361. The defendants claimed that this individual paid almost $75,000 in premiums up to the time of the motion for remand, and would pay in excess of $75,000 before the case was tried. Id. at 1367.

The issue, *inter alia*, was the proper calculation of the benefit conferred upon the putative class plaintiff if the requested relief was obtained. Id. The court ultimately held that since restitution was sought, the correct measure of the unnamed plaintiff's claim was either the money defendants gained by unreasonably increasing the price of the premium, or the amount overpaid by plaintiff for the higher premium. Id. The court found that even under the most favorable scenario to plaintiffs, the unnamed putative class plaintiff could not meet the $75,000 threshold. Id. at 1367-68.

The Eleventh Circuit has likewise considered situations where the amount in

-8-

controversy is discerned based upon injunctive relief and the financial benefit is too speculative or immeasurable to satisfy amount in controversy. See, e.g., Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268-69 (11th Cir. 2000) (in a case concerning whether an insurance policy required the insurer to compensate insureds for diminished value of their vehicles after repair, it is merely speculative that plaintiffs will derive any financial benefit because even if an injunction issues requiring such, there is no assurance the insurer will not change the policy language accordingly); Ericsson, 120 F.3d at 221-22 (finding remote possibility that monetary value may flow to Ericsson under rebidding of telecommunications contract with City of Birmingham where remedy sought under Alabama law only allowed court to enjoin city's current contract with Motorola, and there was no assurance that Ericsson would be the lowest bidder if the city rebid the project).

Defendants posit that this case is distinguishable from those relied upon by plaintiffs because, unlike in those cases, the benefit conferred upon plaintiffs if an injunction issues is calculable to the penny, and thus not unduly speculative or immeasurable. In support of their position, defendants rely on the former Fifth Circuit's decision in Duderwicz, et al. v. Sweetwater Sav. Assoc., 595 F.2d 1008 (5th Cir. 1979) (binding in the Eleventh Circuit).

In Duderwicz, plaintiffs sought to recover interest charged or to be charged by defendant pursuant to alleged usurious notes. 595 F.2d at 1013. Interpreting Georgia law, the court held that if the rate charged was deemed usurious, defendant

-9-

would forfeit all interest charged under the note. Id. at 1013.  After determining the amounts claimed to be forfeited were well in excess of the jurisdictional limit, the remaining question was whether "the pecuniary consequence of this forfeiture may be considered as part of the value of the matter in controversy." Id. at 1014.  The Court held that it could consider the entire forfeiture of interest under the note as that would represent the true pecuniary consequence of a usury finding. Id.

While this Court understands that the Duderwicz court was interpreting Georgia usury statutes in the context of forfeiture, the analysis nevertheless applies in this case, distinguishing it from the Forest, Lutz, Morrison and Ericsson decisions.  Here, even assuming, *arguendo*, defendants are limited to arguing that the difference in the allegedly agreed upon rate and the rate charged under the ARM notes is the proper measure of pecuniary gain flowing to plaintiffs, the calculation of this difference is not "too speculative or immeasurable".  Defendants correctly point out that if Osten received the 4.5% interest rate, rather than the variable rate between 8.5% and 14.5%, the minimum he would save in interest payments over the loan duration is approximately $110,000.00.  This is markedly different from those cases addressing insurance contracts, which are typically cancelable by either party, because, here, there is a binding thirty year contractual undertaking between plaintiffs and defendants, the terms of which will not change.  That a particular borrower might pay off the loan early does not render the potential damages too speculative for the purpose of valuing the injunctive relief.

-10-

While it appears the Barbers and Holloway do not independently meet the $75,000 amount in controversy requirement, Mr. Osten does even in light of the sale of his property subject to the Ameriquest mortgage. Under Eleventh Circuit precedent, because the sale occurred after the case was removed to federal court, the sale is irrelevant for consideration of whether removal was proper. See Poore, 218 F.3d at 1290 (proper inquiry is whether court had jurisdiction at time of removal).[4]

Citing Smith v. 2001 South Dixie Highway, Inc., 872 So. 2d 992 (Fla. 4th DCA 2001), plaintiffs further argue that the nature of injunctive relief available under FDUTPA, § 501.211(1), Florida Statutes, is limited and that obtaining such relief would only remunerate the plaintiffs and putative class plaintiffs for the amount of improper interest already paid, but would not alleviate their prospective responsibility under the purportedly tainted ARM notes. However, this is inconsistent with plaintiffs' prayer for relief which seeks "Injunctive relief against enforcement of [the] mortgage contracts". Moreover, neither Smith, the language of FDUTPA, nor common sense support this limitation.[5]

### 2. **The *Allapattah* decision**

In Allapattah, the Supreme Court held:

---

[4] Osten's sale does not render his case moot as he still allegedly incurred damages during the time he paid on the note prior to the sale.

[5] The Court is making its determination for jurisdictional purposes only and is not intending to make a binding ruling on the scope of injunctive relief available under FDUTPA.

> ...where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount in controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.

125 S.Ct. at 2615. The ramifications of the Supreme Court's decision are unequivocal in this case. Because Osten satisfies the amount in controversy requirement under § 1332(a), defendants properly removed this case under § 1441(a), even though not all named plaintiffs or members of the putative class satisfy the amount in controversy threshold.

### B.   Motion to Dismiss

When considering a motion to dismiss under Rule 12(b)(6), a complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lopez v. First Union Nat'l Bank of Fla., 129 F.3d 1186, 1189 (11th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). When reviewing a motion to dismiss, a court is required to accept the allegations in the complaint as true. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

Even assuming, *arguendo*, Rule 9(b), Federal Rules of Civil Procedure, applies as set forth in Defendants' Motion to Dismiss (Doc. 4), plaintiffs have sufficiently pled the elements of all claims. Plaintiffs have likewise properly alleged theories of joint liability, joint venture, and aiding and abetting among the defendants.

Accordingly, it is hereby **ORDERED**:

1. Plaintiffs' Motion for Remand (Doc. 12) is **DENIED.**

2. Defendants' Motion to Dismiss (Doc. 4) is **DENIED.** Defendants must file an Answer to the Class Action Complaint by no later than **February 14, 2006.**

3. The parties are further ordered to file a Case Management Report in compliance with the Local Rules of this Court by no later than **February 14, 2006.**

4. Plaintiffs' Motion for Leave to File Reply Memorandum in Support of Motion to Remand (Doc. 29) is **GRANTED.**[6]

**DONE AND ORDERED** at Jacksonville, Florida this 9th day of January, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

t.
Copies to: counsel of record

---

[6] In rendering its opinion, this Court considered plaintiffs' supplemental memorandum attached to the motion for leave and the substantive arguments made therein, and defendants' response thereto. (Docs. 29, 34). However, the Court notes that plaintiffs apparently failed to comply with Local Rule 3.01(g) requiring parties to confer before filing a non-dispositive motion. This Court takes the dictates of that rule very seriously. Thus, the parties are instructed to comply with Rule 3.01(g) in the future. Failure to do so may result in denial of motions on that ground alone.